Cite as 2022 Ark. 27

# SUPREME COURT OF ARKANSAS

**No.** CV–21–185

|  |  |
|---|---|
| | **Opinion Delivered:** February 10, 2022 |
| NIKITA LEE MAHONEY, KIMBERLY ANN SNODGRASS, CHRISTOPHER SNODGRASS, DETRICK BRANDON, TINA MARIE PHARES, AND DAZARIOUS BRAGGS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br><br>APPELLANTS | APPEAL FROM THE WHITE COUNTY CIRCUIT COURT [NO. 73CV-18-874]<br><br>HONORABLE DAVID N. LASER, JUDGE |
| V. | |
| MARK DERRICK, IN HIS OFFICIAL CAPACITY AS DISTRICT JUDGE FOR THE 23RD JUDICIAL DISTRICT OF THE STATE OF ARKANSAS<br><br>APPELLEE | AFFIRMED. |

**SHAWN A. WOMACK, Associate Justice**

Nikita Mahoney, Kimberly Snodgrass, Christopher Snodgrass, Detrick Brandon, Tina Phares, and Dazarious Braggs (collectively, "the Appellants") sued Judge Mark Derrick in his official capacity, challenging the constitutionality and legality of various practices concerning bond, the appointment of counsel, and the imposition and payment of fines. Because judicial immunity protects Judge Derrick from lawsuits related to his official, judicial acts, we affirm the circuit court's order granting summary judgment in favor of Judge Derrick.

I.  *Background*

Mark Derrick is a state district court judge for White and Prairie Counties and eight towns therein.  The Appellants, who appeared before Judge Derrick as criminal defendants, were convicted of various misdemeanors and subject to court-imposed fines.  In different manners and with varying frequency, the Appellants failed to pay their court-imposed fines, which often resulted in jail time and additional fines.  Together, they sued Judge Derrick in his official capacity, arguing that he (1) did not consider appointing an attorney for indigent defendants at the first court appearance; (2) set bail according to a uniform schedule, without regard to a defendants' ability to pay; (3) fined defendants according to a uniform fine schedule, without considering their ability to pay; (4) set a uniform payment plan for defendants, without determining whether the plan caused hardship; (5) jailed defendants for failing to pay their fines, without determining whether the failure to pay was willful; and (6) suspended defendants' driver's license without notice or an opportunity to be heard.[1] While the claims concerning the uniform payment plans and failure to appoint an attorney invoke only Arkansas law, the other claims allege violations of the federal constitution and seek relief under 42 U.S.C. § 1983.

---

[1] The circuit court found that this claim failed as a matter of law because the Department of Finance and Administration—not Judge Derrick—had sole authority to suspend driver's licenses.  The Appellants did not argue this issue in their brief and, therefore, have abandoned it on appeal. *DePriest v. AstraZeneca Pharms., L.P.*, 2009 Ark. 547, at 8–9, 351 S.W.3d 168, 173.

The Appellants sought a declaratory judgment that these actions were unconstitutional or otherwise illegal. They also sought certification of a class action for

> [a]ll individuals who owe or will incur fines, fees, costs, and/or restitution as part of a sentence for a misdemeanor criminal conviction imposed by Judge Derrick [and] who, at the time of any suspension of their driver's license for failure to pay fines, fees, costs, and/or restitution imposed at sentencing by Judge Derrick, cannot or could not pay the debt demanded due to their financial circumstance.

The parties filed cross-motions for summary judgment and submitted proposed findings of fact and conclusions of law.

The circuit court granted summary judgment in favor of Judge Derrick on all claims and denied the Appellants' motion for partial summary judgment.[2] In support of its order, the circuit court found that Judge Derrick was entitled to judicial immunity because he acted within the scope of his judicial authority. It further found that the Appellants' requested relief was retrospective, and, to the extent they couched it as prospective, the alleged future harm was uncertain and speculative. The Appellants timely appealed.

---

[2] Appellants also appeal the denial of their motion for partial summary judgment. Generally, the denial of summary judgment is not reviewable on appeal. *City of Little Rock v. Nelson ex rel. Nelson*, 2020 Ark. 34, at 5, 592 S.W.3d 633, 638. Sometimes, as Appellants correctly contend, this court may consider the denial of a motion for summary judgment when considered in conjunction with an appeal of an order granting summary judgment. *See Wilson v. McDaniel*, 247 Ark. 1036, 1041, 449 S.W.2d 944, 947 (1970). However, if "review of the denied motion is not necessary to sustain the motion that was granted, an appeal is not proper." *Cannady v. St. Vincent Infirmary Med. Ctr.*, 2018 Ark. 35, at 11, 537 S.W.3d 259, 266. Because this court need not review the denial of the Appellants' motion to affirm the grant of the Judge Derrick's, the order denying the Appellants' motion for partial summary judgment is not an appealable order. *See id.*; *see also* Ark. R. App. P.– Civ. 2(a)(2).

## II. *Discussion*

Appellants contend that the circuit court erred in finding that Judge Derrick was entitled to absolute judicial immunity. In support of their contention, they argue that Judge Derrick was not acting in his judicial capacity but rather in an administrative capacity. Relatedly, Appellants argue they seek prospective relief, which would allow them to overcome the defense of judicial immunity. Because Appellants' claims against Judge Derrick invoke a federal cause of action, we look to the federal courts for guidance. *See Haywood v. Drown*, 556 U.S. 729, 740–41 (2009).

### A. Standard of Review

A circuit court may grant summary judgment when there are no genuine issues of material fact to litigate, and the movant is entitled to summary judgment as a matter of law. *Cherokee Nation Bus., LLC v. Gulfside Casino P'ship*, 2021 Ark. 183, at 7, 632 S.W.3d 284, 289. But when parties file cross-motions for summary judgment, they essentially agree that there are no disputed material facts, and this court must only determine whether the appellee is entitled to judgment as a matter of law. *Id.* This court reviews questions of law de novo. *Id.*

### B. Judicial Immunity

Judicial immunity is an established defense that judges may raise when they are defendants in lawsuits concerning their judicial duties. *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967); *Peterson v. Judges of Jefferson Cty. Cir. Ct.*, 2014 Ark. 228, at 3–4. "Judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Just.*

4

*Network Inc. v. Craighead Cty.*, 931 F.3d 753, 759 (8th Cir. 2019) (quoting *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (internal quotation marks omitted). This immunity applies to lawsuits brought under 42 U.S.C. § 1983 to recover for alleged violations of federal civil rights. *Just. Network Inc.*, 931 F.3d at 760 (citing *Mireles*, 502 U.S. at 11–12). But there are two narrow exceptions where a judge may not claim judicial immunity: first, when he acts outside of his judicial capacity; and second, when his actions, "though judicial in nature, [are] taken in complete absence of jurisdiction." *Just. Network Inc.*, 931 F.3d at 760 (quoting *Mireles*, 502 U.S. at 11–12) (internal quotation marks omitted). An allegation of bad faith or malice alone, however, is insufficient to defeat judicial immunity. *Just. Network Inc.*, 931 F.3d at 760 (citing *Mireles*, 502 U.S. at 11).

1. *Nature of the function*

Whether a judge acts in his judicial capacity depends on whether the challenged action "is a function normally performed by a judge, and to the expectations of the parties." *Just. Network Inc.*, 931 F.3d at 760 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)) (internal quotation marks omitted). Importantly, the nature and function of the act is the subject of scrutiny, not the act itself. *Just. Network Inc.*, 931 F.3d at 760. If a particular act relates to a general function a judge typically performs, then the act is in his judicial capacity. *Id.* To determine whether Judge Derrick's actions were judicial in nature, we must further examine his challenged practices.

The Appellants first allege that when criminal defendants appear before Judge Derrick, he advises them of their right to counsel but fails to appoint counsel. Judge Derrick admits that he informs his defendants of their right to counsel and tells them that the court

5

will appoint one on their behalf if they cannot afford one. Appellants, however, contend that Judge Derrick's failure to inquire about the defendants' ability to afford counsel is a violation of their due process rights. Regardless of the merits of this claim, the appointment of counsel is clearly a judicial function, which Judge Derrick carries out in his judicial capacity. *See* Ark. R. Crim. P. 8.2(a).

Appellants next allege that Judge Derrick sets bond without considering an individual's ability to pay. When defendants appear before a judge, the judge must set money bail if he determines that there is no other way to reasonably ensure the appearance of a defendant in court. Ark. R. Crim. P. 9.2(a). This requirement squarely places the authority to set bond with a judge. *Id.* Consequently, judges' decisions concerning bond are made in their judicial capacities. *See Just. Network Inc.*, 931 F.3d at 760.

Appellants relatedly claim that Judge Derrick unlawfully fines defendants and sets uniform payment schedules without considering defendants' ability to pay. Arkansas Code Annotated §§ 16-13-701 et seq. (Repl. 2010 & Supp. 2021) governs the assessment and collection of court-imposed fines. It grants courts authority to, *inter alia*, impose fines, *Id.* § 16-13-702(a)(1), imprison a defendant who fails to pay a fine, *Id.* § 16-13-702(a)(5), and establish installment plans for defendants to pay their fines, *Id.* § 16-13-704(a)(1). As with bond, Judge Derrick makes these decisions in his judicial capacity. *See Just. Network Inc.*, 931 F.3d at 760.

While only a judge may impose fines or create an installment plan to assist defendants with their payments, Appellants argue that the judge's delegation of certain administrative aspects of these duties—namely, permitting court clerks to grant payment extensions or

6

accept partial payments at their discretion—requires this court to find that court-imposed fines are administrative rather than judicial duties. But this is not so. The mere delegation of ancillary administrative tasks does not rid a function of its judicial nature. *See Forrester v. White*, 484 U.S. 219, 227–28 (1988). Judges may often ask their subordinates to perform tasks on their behalf to promote the administration of justice. Asking a court clerk to accept a payment for a fine or, in his discretion, permit a defendant to make a partial payment is not akin to the nonjudicial, administrative function of, for example, hiring court employees. *See id*. at 222. The imposition and administration of fines is purely an adjudicative, i.e., judicial, function. *See id*.

The above analysis equally applies to the Appellants' allegation that Judge Derrick wrongfully imprisons defendants who fail to pay their fines. The decision to imprison a defendant for his failure to pay court-imposed fines stems from the ability to impose the fines initially. *See, e.g.*, Ark. Code Ann. § 16-13-703. Ordering a defendant imprisoned is a quintessential judicial function. In fact, suing judges for their sentencing decisions was one of the exact issues that the Supreme Court considered when deciding to extend the defense of judicial immunity to § 1983 claims. *See Forrester*, 484 U.S. at 225 (noting that judicial immunity is "a device for discouraging collateral attacks and thereby helping to establish appellate procedures as the standard system for correcting judicial error"). Thus, as with all other challenged acts, Judge Derrick's decision to imprison defendants who are delinquent on their fines is unquestionably an exercise of his judicial authority. Accordingly, all the challenged actions were done in Judge Derrick's judicial capacity. *Just. Network Inc.*, 931 F.3d at 762.

## 2. *Retrospective Relief*

Having found that Judge Derrick undertook all challenged acts in his judicial capacity, we must now consider whether the relief Appellants seek is purely prospective, declaratory relief, which judicial immunity does not bar. *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984) (permitting *prospective* injunctive relief against a judge).[3] "A declaratory judgment is meant to define the rights and obligations of the parties in anticipation of *some future conduct*, not simply to proclaim liability for a past act." *Just. Network Inc.*, 931 F.3d at 762 (emphasis in original). If a plaintiff seeks a declaration of a past liability against a judge, declaratory relief is unavailable. *Id.*

In *Justice Network Inc.*, a private probation company challenged two judges' practice of forgiving fees that defendants owed to the company. *Id.* at 757–58. Specifically, the company alleged that the practice was, among other things, an unconstitutional taking, and sought injunctive and declaratory relief. *Id.* Affirming the district court, the U.S. Court of Appeals for the Eighth Circuit found that the company's request for declaratory relief was, in fact, retrospective and, therefore, not entitled to relief under § 1983. *Just. Network Inc.*, 931 F.3d at 764. In particular, the Eighth Circuit noted that the company's references to the judge's actions as "policies" do not change the fact that the requested relief sought to invalidate the past actions of the judges. *Id.*

---

[3]Congress amended § 1983 after *Pulliam* to allow for injunctive relief against a judge only if "a declaratory decree was violated[,] or declaratory relief was unavailable." 42 U.S.C. § 1983.

In this sense, Appellants' claims are hardly distinguishable from those in *Justice Network Inc.* Seeking a declaratory judgement that *past actions* are unconstitutional is not a claim for prospective declaratory relief. *Id.* (citing *Davis v. Campbell*, No. 3:13-cv-0693 LEK/ATB, 2014 WL 234722, at *9 (N.D.N.Y. Jan. 22, 2014)). Appellants' claim for declaratory relief does just that: asks for a declaration of the constitutionality of Judge Derrick's *past* actions. It is not enough that Appellants claim that Judge Derrick's actions will "continue to cause irreparable harm" or "continue to suffer economic loss." Regardless of their efforts to couch their complaint as seeking prospective, declaratory relief, Appellants' allegations wholly concern the constitutionality of *past* convictions, *past* fines, and *past* sentences. To the extent the Appellants allege any future harm—e.g., that they will face future arrests, fines, jail time, or all three because of their existing convictions—it is merely speculative and challenges the validity of their underlying criminal convictions. *See Heck v. Humphrey*, 512 U.S. 477, 484–85 (1994) (holding that section 1983 "actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments").

The record demonstrates that Appellants seek retrospective declaratory relief, which is insufficient to overcome judicial immunity. As a result, absolute judicial immunity is a defense that Appellants cannot surmount, and the circuit court properly granted Judge Derrick's motion for summary judgment.

Affirmed.

HUDSON, J., concurs.

**COURTNEY RAE HUDSON, J., concurs.** I agree with the majority that, in this instance, judicial immunity prevents our court from granting the relief appellants seek. I

9

write separately to emphasize that our decision today should not be construed as any sort of endorsement of Judge Derrick's practices. Rather, as the majority noted, the actions at issue were judicial in nature and therefore cloaked with immunity. Consequently, "[r]egardless of the merits" of appellants' claims, they cannot prevail.

Appellants' complaint includes claims that Judge Derrick sets bail and imposes fines without inquiring into a party's ability to pay. They further allege that Judge Derrick establishes uniform payment plans without considering a party's ability to pay, and then jails them if they miss payments without determining whether the failure to pay was willful. These policies, they claim, have established an "illegal, modern-day debtors' prison in White County." Yet, this is not a direct appeal for our review, and we do not have all the factual details for the appellants' cases. However, if true, these allegations are disturbing. We have recognized that the Debtors' Act of 1869 abolished the practice of imprisoning people for debts. *Stehle v. Zimmerebner*, 2016 Ark. 290, 497 S.W.3d 188. This fundamental concept is found in our own constitution. *Id.*

Moreover, our district courts are often the only interaction that the public has with the judiciary. Therefore, it is critical that we are mindful of the practices and procedures in district courts that may undermine public confidence in the administration of fair and impartial justice. Not only should all judges scrupulously follow our constitution, statutes, and rules in proceedings, but also, we must treat all parties with respect, regardless of their financial or social status.

Our district courts are not courts of record. Without an official record, we are sometimes presented with a challenge in fulfilling our constitutional responsibility to

exercise superintending control over these courts. I encourage our court to actively seek methods to ensure that our district courts administer justice with the professionalism that all people deserve. Perhaps, for instance, livestreaming proceedings could add a measure of accountability.

I concur.

*FUQUA CAMPBELL, P.A.*, by: *John T. Adams*; *Arthur E. Ago*, *pro hac vice*, Lawyers' Committee for Civil Rights Under Law; and *VENABLE LLP*, by: *Edward P. Boyle*, *pro hac vice*; *Michael M. Agosta*, *pro hac vice*; *Emily Seiderman West*, *pro hac vice*; and *Gary R. Dunn*, *pro hac vice*, for appellants.

*Leslie Rutledge*, Att'y Gen., by: *William C. Bird III*, Sr. Ass't Att'y Gen., for appellee.