Cite as 2020 Ark. 180

# SUPREME COURT OF ARKANSAS

No. CV-19-318

| | |
|---|---|
| | **Opinion Delivered:** May 7, 2020 |
| ROBY CLIFTON DAVIS<br><br>                    PETITIONER<br><br>V.<br><br>PENNYMAC LOAN SERVICES, LLC<br>                    RESPONDENT | CERTIFIED QUESTION OF LAW FROM THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF ARKANSAS<br><br>HONORABLE BEN T. BARRY, JUDGE<br><br><u>CERTIFIED QUESTION ANSWERED</u>. |

**KAREN R. BAKER, Associate Justice**

This case presents a question of law certified to this court by the United States Bankruptcy Court for the Western District of Arkansas in accordance with Arkansas Supreme Court Rule 6-8 (2019). The question of law presented concerns the requirement for creditors to comply strictly with the Arkansas Statutory Foreclosure Act, codified at Arkansas Code Annotated §§ 18-50-101 to -117 (Repl. 2015)—specifically, the provision under section 18-50-104(b)(4) that requires the trustee's notice of default to set forth "[t]he default for which foreclosure is made." The bankruptcy court certified the following question:

> Whether mere acknowledgment that a default has occurred is sufficient for the trustee's Notice of Default and Intention to Sell or does the Arkansas statute require disclosure of the specific default under the terms of the mortgage agreement.

For the reasons that follow, we conclude that section 18-50-104(b)(4) requires disclosure of the specific default under the terms of the mortgage agreement.

The certified question arises from a foreclosure action initiated by the respondent, PennyMac Loan Services, LLC ("PennyMac"), and the subsequent bankruptcy proceedings of petitioner Roby Clifton Davis ("Davis"). In 2013, Davis executed a mortgage on property located in Logan County. The mortgage was assigned to PennyMac in 2015. Davis ultimately defaulted, and PennyMac initiated foreclosure proceedings.

On August 31, 2017, PennyMac sent Davis a detailed "Notice of Default and Intent to Accelerate." PennyMac's notice stated that Davis was "in default under the terms of the documents creating and securing your Loan described above . . . for failure to pay the amounts due." The letter also set forth the amount that Davis was required to pay to cure the default and the date on which payment was due. On August 14, 2018, PennyMac again notified Davis that "[p]ayments have not been made as required by the note and mortgage or deed of trust[.]"

On August 29, 2018, a "Notice of Default and Intention to Sell" was filed. The notice stated in pertinent part: "WHEREAS, default has been made with respect to a provision in the mortgage that authorizes sale in the event of the default of said provision and the same is now, therefore, wholly due."

On November 8, 2018, the property was sold to PennyMac at a public auction at the Logan County Courthouse. On November 12, 2018, a mortgagee's deed was executed in favor of PennyMac and filed of record in Logan County on November 15, 2018. On November 21, 2018, Davis filed his bankruptcy petition and sought to have the foreclosed-

2

on property listed as part of the bankruptcy estate. On January 3, 2019, PennyMac filed an amended post-sale motion for relief from automatic stay in the bankruptcy court. In its motion, PennyMac asserted that because Davis's interest in the property was terminated, the property should not be considered part of the bankruptcy estate. Davis responded that the property is part of the bankruptcy estate because the foreclosure sale was defective. At the conclusion of the trial, the bankruptcy court took the matter under advisement and then certified the instant question to this court.

This leads to the certified question: "Whether mere acknowledgment that a default has occurred is sufficient for the trustee's Notice of Default and Intention to Sell or does the Arkansas statute require disclosure of the specific default under the terms of the mortgage agreement." The answer to this question hinges on our statutory interpretation of Arkansas Code Annotated section 18-50-104(b)(4).

We review issues of statutory interpretation de novo, as it is for this court to determine the meaning of a statute. *Dep't of Ark. State Police v. Keech Law Firm, P.A.*, 2017 Ark. 143, 516 S.W.3d 265. The basic rule of statutory construction is to give effect to the intent of the legislature by giving words their usual and ordinary meaning. *Ark. Soil & Water Conservation Comm'n v. City of Bentonville*, 351 Ark. 289, 92 S.W.3d 47 (2002). "When a statute is clear, it is given its plain meaning, and we will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. In other words, if the language of the statute is plain and unambiguous, the analysis need go no further." *Yamaha Motor Corp., U.S.A. v. Richard's Honda Yamaha*, 344 Ark. 44, 52, 38 S.W.3d 356, 360 (2001). This court is very reluctant to interpret a legislative act in a manner

3

contrary to its express language unless it is clear that a drafting error or omission has circumvented legislative intent. *Id.*, 38 S.W.3d at 360. We construe statutes so that no word is left void, superfluous, or insignificant, and we give meaning to every word in the statute, if possible. *Bedell v. Williams*, 2012 Ark. 75, 386 S.W.3d 493 (citing *Rylwell, L.L.C. v. Arkansas Dev. Fin. Auth.*, 372 Ark. 32, 269 S.W.3d 797 (2007)).

The statute at issue here, Arkansas Code Annotated section 18–50–104, sets forth the prerequisites for a foreclosure sale, including the contents of a notice of sale. Subsection (a) states that the trustee or mortgagee *may not* sell the trust property *unless*: "(1) The mortgagee, trustee, or beneficiary has filed for record with the recorder of the county in which the trust property is situated a duly acknowledged notice of default and intention to sell containing the information *required* by subsection (b) of this section[.]" Ark. Code Ann. § 18-50-104(a)(1) (emphasis added). Subsection (b) states that

> (b) The mortgagee's or trustee's notice of default and intention to *sell shall set forth*:
>
> (1) The names of the parties to the mortgage or deed of trust;
>
> (2) A legal description of the trust property and, if applicable, the street address of the property;
>
> (3) The book and page numbers where the mortgage or deed of trust is recorded or the recorder's document number;
>
> (4) *The default for which foreclosure is made*;
>
> (5) The mortgagee's or trustee's intention to sell the trust property to satisfy the obligation, including in conspicuous type a warning as follows: "YOU MAY LOSE YOUR PROPERTY IF YOU DO NOT TAKE IMMEDIATE ACTION";
>
> (6) The time, date, and place of sale; and

4

(7) The name, address, and telephone number of the party initiating foreclosure.

Ark. Code Ann. § 18-50-104(b) (emphasis added).

Davis argues that the language in section 18-50-104 is mandatory and creates conditions that must be met before a sale may take place. Davis contends that the directive that the trustee "may not" sell the property "unless" means what it says. In other words, the property "may not" be sold in this manner "unless" certain conditions are met. One such condition is filing a notice that contains the information "required" by another part of the statute, subsection (b). Regarding subsection (b)(4), Davis contends that "the default for which foreclosure is made" requires the trustee or mortgagee to set out in the notice the specific event that placed the mortgagor in default. Davis points out that the mortgage document at issue in the present case contains multiple events that would result in default, including: (1) failure to make payments when due; (2) destroying, damaging, or impairing the property; allowing the property to deteriorate; committing waste on the property; (3) giving materially false, inaccurate, or misleading information or statements to the lender in connection with obtaining the loan to purchase the property; (4) the institution of any civil or criminal proceedings that could result in forfeiture of the property or other material impairment of the lender's interest; and (5) permitting the presence, use, disposal, storage, or release of any hazardous substances on the property or threatening the release of any hazardous substances on the property. Thus, Davis contends that section 18-50-104(b)(4) requires disclosure of the specific default under the terms of the mortgage agreement.

PennyMac responds that section 18-50-104(b)(4) does not require the lender to identify the specific event that triggered the default; the 1999 legislative amendment of this

5

section reflects legislative intent to make the disclosures under that provision less, not more, specific; and disclosure of the default would be redundant because other provisions of the Act and the mortgage require the lender to provide the borrower with prior notices identifying the exact date on which the default occurred and explaining how to cure the default. Instead, PennyMac asserts that section 18-50-104(b)(4) is satisfied by stating that the default is one for which the mortgage authorizes a foreclosure sale. PennyMac further responds that public-policy considerations disfavor unnecessary disclosure of personal financial circumstances. PennyMac asserts that the certified question is too broad and requests that we reformulate the question as certified by the bankruptcy court.[1] PennyMac contends that we need not address what section 18-50-104(b)(4) requires when the default is based on something other than a failure to pay because those unique circumstances are not applicable here. Davis counters that the statute commands disclosure of the specific default despite the reason for the default. Stated differently, nothing in the statute allows the notice and intention to sell to omit specificity for one category of default and include it for other categories. Further, Davis argues that despite PennyMac's policy arguments to the contrary, the legislature's words must be given effect. We agree.

---

[1]PennyMac asks this court to reformulate the question as follows: When a borrower who has defaulted due to failure to pay has already been provided detailed notices pursuant to Ark. Code Ann. § 18-50-103 and the applicable mortgage or deed of trust informing him of the nature of his default, identifying the exact date of default, and explaining how to cure the default, does § 18-50-104(b)(4) require a lender to disclose more than the fact that the default is one for which the mortgage or deed of trust authorizes foreclosure? We decline to reformulate the question and instead answer the question as certified by the bankruptcy court.

The Statutory Foreclosure Act establishes a system of nonjudicial foreclosure proceedings as an alternative to judicial foreclosures. *Dickinson v. SunTrust Nat'l Mortg. Inc.*, 2014 Ark. 513, 451 S.W.3d 576. Because the Act is in derogation of the common law, its provisions must be strictly construed and complied with. *Id.* (citing *Henson v. Fleet Mortg. Co.*, 319 Ark. 491, 892 S.W.2d 250 (1995)). Again, "the trustee or mortgagee may not sell the trust property unless . . . the mortgagee or trustee has filed for record . . . a . . . notice of default and intention to sell containing . . . *the* default for which foreclosure is made." Ark. Code Ann. § 18-50-104(a)(1) & (b)(4) (emphasis added). In plain English, "the" is a definite article that points to a definite object that (1) is so well understood that it does not need description; (2) is a thing that is about to be described; or (3) is important. *The Chicago Manual of Style* R. 5.70 (17th ed. 2017). "'The' is the word used before nouns, with a specifying or particularizing effect, opposed to the indefinite or generalizing force of 'a' or 'an.'" *United States v. Hudson*, 65 F. 68, 71 (W.D. Ark. 1894). In contrast, "a" is an indefinite article used to refer to nonspecific objects, things, or persons that are not distinguished from the other members of a class. *The Chicago Manual of Style*, *supra*, R. 5.71.

Applying the standards discussed above, we interpret these provisions to require specificity beyond mere acknowledgement that "a default has been made with respect to a provision in the mortgage." Stated differently, in order to meet the requirement under the statute—that a notice set forth . . . the default for which foreclosure is made—the notice must state the specific default that occurred. To hold otherwise would render the word "the" meaningless.

Certified question answered.

Special Justice SARAH COTTON PATTERSON joins in this opinion.

KEMP, C.J., not participating.

*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*; and *Caddell Reynolds Law Firm*, by: *Joel G. Hargis*, for petitioner.

*Wright, Lindsey & Jennings LLP*, by: *Judy S. Henry* and *Kristen S. Moyers*; and *Locke Lord LLP*, by: *W. Scott Hastings* and *Daron L. Janis*, *pro hac vice*, for respondent.