Cite as 2021 Ark. 183

# SUPREME COURT OF ARKANSAS

**No.** CV-21-289

| | |
|---|---|
| | **Opinion Delivered:** October 21, 2021 |
| CHEROKEE NATION BUSINESSES, LLC; AND ARKANSAS RACING COMMISSION <br><br> APPELLANTS <br><br> V. <br><br> GULFSIDE CASINO PARTNERSHIP <br> APPELLEE | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-19-5832] <br><br> HONORABLE TIMOTHY DAVIS FOX, JUDGE <br><br><br> REVERSED AND DISMISSED. |

**KAREN R. BAKER, Associate Justice**

This appeal stems from ongoing litigation for the sole casino license for Pope County, Arkansas. The instant appeal returns to us a second time after our previous reversal and remand. *Cherokee Nation Businesses, LLC v. Gulfside Casino P'ship*, 2021 Ark. 17, at 9, 614 S.W.3d 811, 817 ("*CNB I*"). On June 28, 2021, the parties filed a joint motion to expedite this appeal, which we granted on July 2, 2021.

The history of the matter begins with Arkansas Constitutional Amendment 100, "The Arkansas Casino Gaming Amendment of 2018," which was approved by voters in November 2018 and became effective on November 14, 2018. The Amendment provides that appellant, the Arkansas Racing Commission ("ARC"), is to award a casino license to one entity to operate a casino in Pope County. Relevant to this litigation, in December 2018, appellee, Gulfside Casino Partnership ("Gulfside"), obtained letters of support from outgoing Pope County Judge

Jim Ed Gibson and Russellville Mayor Randall Horton, both of whom were in office at the time and whose tenures ended on December 31, 2018.

On February 21, 2019, the ARC adopted Rule 2.13(5)(b) of the ARC—Casino Gaming Rules codified at Ark. Admin. Code 006.06.5-2 § 2.13(5)(b) (Westlaw 2019) (sometimes referred to as "the Rule"), which provides that the letters of support must be from the county judge, quorum court, or mayor holding office at the time of the submission of an application for a casino license. On March 5, 2019, the General Assembly passed Act 371 of 2019, which is identical to Rule 2.13(5)(b). The Act provides that "the Arkansas Racing Commission shall require a casino applicant for a casino in Pope County . . . to submit: . . . a letter of support from the county judge or a resolution of support from the quorum court, and from the mayor . . . holding office at the time of the submission of an application for a casino license." Act 371 became effective on March 8, 2019, and is codified at Ark. Code Ann. § 23-117-101 (Supp. 2021).

On March 26, 2019, the ARC opened an application period from May 1 through May 30, 2019. Gulfside and four other applicants, including appellant, Cherokee Nation Businesses, LLC ("CNB"), applied for a casino license in May 2019. At that time, neither Gibson nor Horton was in office. On June 13, 2019, the ARC denied all five applications. Gulfside appealed to the ARC. After a hearing, on August 15, 2019, the ARC denied Gulfside's administrative appeal.

Also on August 15, Gulfside appealed and filed the underlying litigation in circuit court challenging the denial of a license. Gulfside filed suit pursuant to Arkansas Code Annotated section 25-15-212 (Supp. 2021) regarding review of an agency adjudication; Arkansas Code Annotated section 25-15-207 regarding review of an agency rule in an action for declaratory

2

judgment; and Arkansas Code Annotated section 16-111-102 (Repl. 2016), the Arkansas Declaratory Judgment Act. In its complaint, Gulfside sought relief (1) declaring that the Rule is unconstitutional; (2) declaring that the statute is unconstitutional; and (3) ordering ARC to grant Gulfside the license.

On August 23, 2019, CNB filed a motion to intervene in Gulfside's litigation, which the circuit court denied. From the circuit court's order denying intervention, CNB brought an interlocutory appeal. On February 4, 2021, we held that CNB "is entitled to intervention as of right under Rule 24(a)(2). The circuit court's order is reversed in full and remanded." *CNB I.* On July 14, 2020, in a related matter, *Cherokee Nation Businesses, LLC v. Arkansas Racing Commission*, Case No. CV-20-438, we granted in part a petition for writ of certiorari and vacated the circuit court's orders on the petitioners' postjudgment motions for lack of jurisdiction, which found that CNB/Legends was not a qualified casino applicant.

Following remand and our holding that CNB was entitled to intervene, the instant case returned to the circuit court and all three parties filed motions for summary judgment. Gulfside again challenged the constitutionality of the Act, asserting that the Rule and the Act added a requirement beyond that provided in the Amendment and contended that its application satisfied Amendment 100's requirements. The ARC and CNB asserted that the rules and statutes at issue are constitutional and consistent with the Amendment. On May 7, 2021, the circuit court held a hearing. On May 21, the circuit court granted in part and denied in part Gulfside's motion for summary judgment and entered an order stating in pertinent part:

> The court grants the declaratory judgment requested . . . that a portion of Rule 2.13(5)(b) of the *Casino Gaming Rules* is unconstitutional for imposing an additional requirement on applicants not contained in Amendment 100.
>
> . . .

3

The unconstitutional portion of Rule 2.13(5)(b) which is ordered stricken is the phrase, "shall be dated and signed by the County Judge, Quorum Court members, or Mayor holding office at the time of the submission of an application for a casino gaming license." Additionally, the court grants the declaratory judgment . . . that A.C.A. 27-117-101(b) be declared unconstitutional.

In sum, the circuit court granted Gulfside relief on counts 1 and 2, declaring that the Rule and the Act were unconstitutional because they impose an additional qualification to Amendment 100. The court denied Gulfside relief on count 3—its request for injunctive relief against the ARC. From that order, only CNB and the ARC appeal and present one issue: whether the circuit court erred in its interpretation of Amendment 100. We reverse and dismiss for the reasons that follow.

## I. *Background*

We begin our analysis by identifying the Amendment and the applicable rule and statute.

## A. Amendment 100

Amendment 100 contains eleven sections. Sections 2, 3, and 4 are relevant to this appeal. First, section 2 defines "casino applicant":

(b) "Casino applicant" is defined as any individual, corporation, partnership, association, trust, or other entity applying for a license to conduct casino gaming at a casino.

Second, section 3 provides the General Assembly with the authority to pass laws and appropriate funds for casino gaming and states in pertinent part:

(c) To fulfill the purposes of this Amendment, the Arkansas General Assembly shall from time to time enact laws, and appropriate monies to or for the use of the Arkansas Racing Commission. Initial laws and appropriations enacted by the General Assembly pursuant hereto shall be in full force and effect no later than June 30, 2019.

4

Third, section 4, "Licensing of casinos and casino gaming," provides the ARC with rule–making authority, including authority to establish rules regarding the application process and issuance and deadlines for the same:

(c) The Arkansas Racing Commission shall adopt rules necessary to carry out the purposes of this Amendment and perform its duties under this Amendment.

. . .

(e) Not later than 120 days after the effective date of this Amendment, the Arkansas Racing Commission shall adopt rules governing:

(2) The manner in which the Arkansas Racing Commission considers applications for issuance of casino licenses;

. . .

(f) Not later than June 1, 2019, the Arkansas Racing Commission shall begin accepting applications for casino licenses.

. . .

(i) The Arkansas Racing Commission shall issue four casino licenses.

(j) The Arkansas Racing Commission shall issue a casino license, as provided in this Amendment, to a Franchise holder located in Crittenden County, there being only one, to conduct casino gaming at a casino to be located at or adjacent to the Franchise holder's greyhound racing track and gaming facility as of December 31, 2017 in Crittenden County. The Arkansas Racing Commission shall also issue a casino license, as provided in this Amendment, to a Franchise holder located in Garland County, there being only one, to conduct casino gaming at a casino to be located at or adjacent to the Franchise holder's horse racing track and gaming facility as of December 31, 2017 in Garland County. Casino licenses to be issued to Franchise holders shall be issued upon:

(1) Adoption by the Arkansas Racing Commission of rules necessary to carry out the purposes of this Amendment; and

(2) Initial laws and appropriations required by this Amendment being in full force and effect.

. . .

5

(n) The Arkansas Racing Commission shall require all casino applicants for a casino license in Pope County and Jefferson County to submit either a letter of support from the county judge or a resolution from the quorum court in the county where the proposed casino is to be located and, if the proposed casino is to be located within a city or town, shall also require all casino applicants to include a letter of support from the mayor in the city or town where the applicant is proposing the casino to be located.

## B. Rule 2.13(5)(b)

Next, at issue are the rules promulgated by the ARC. Pursuant to Amendment 100, the ARC adopted rules in support of the Arkansas Casino Amendment of 2018. *See* Ark. Admin. Code 006.06.5-2 § 2.13(5)(b), "Application for Casino Gaming License and Renewal." With regard to letters of support, subsection (5)(b) requires that the letters of support referenced in section 4(n) of Amendment 100 be issued by officials who are in office at the time of the submission of an application for a casino license:

> All casino applicants for a casino license in Pope County . . . are required to submit either a letter of support from the county judge . . . holding office at the time of the submission of an application for a casino gaming license.

Ark. Admin. Code 006.06.5-2 § 2.13(5)(b).

## C. Arkansas Code Annotated section 23-117-101

Finally, as discussed above, subsequent to the passage of the Amendment and promulgation of the rules, the General Assembly enacted Act 371, codified at Arkansas Code Annotated section 23-117-101 (Supp. 2021), which is identical to Ark. Code Admin. § 006.06.5-2 discussed above. Section 23-117-101 provides:

> (a) Pursuant to The Arkansas Casino Gaming Amendment of 2018, Arkansas Constitution, Amendment 100, the Arkansas Racing Commission shall require a casino applicant for a casino license in Pope County and Jefferson County to submit:
>
> . . .

6

(b) A letter of support from the county judge or a resolution of support from the quorum court, and from the mayor, if appropriate, required under subsection (a) of this section shall be dated and signed by the county judge, quorum court, or mayor holding office at the time of the submission of an application for a casino license.

Having identified the law, we turn to the merits of this appeal.

## II. *Standard of Review*

The instant appeal stems from the circuit court's granting summary judgment. "'Summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law.' *Cannady v. St. Vincent Infirmary Med. Ctr.*, 2012 Ark. 369, 423 S.W.3d 548. 'Ordinarily, upon reviewing a circuit court's decision on a summary-judgment motion, we would examine the record to determine if genuine issues of material fact exist.' *May v. Akers-Lang*, 2012 Ark. 7, 386 S.W.3d 378. However, in a case where the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Hobbs v. Jones*, 2012 Ark. 293, 412 S.W.3d 844. 'When parties file cross-motions for summary judgment, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. As to issues of law presented, our review is de novo.'" *State v. Cassell*, 2013 Ark. 221, at 4–5, 427 S.W.3d 663, 666 (some citations omitted).

Further, the narrow issue before us requires us to interpret our constitution and the applicable statutes and rules. "In reviewing the constitutionality of statutes, this court presumes that a statute was framed in accordance with the constitution. *See Reinert v. State*, 348 Ark. 1, 71 S.W.3d 52 (2002). The burden is on the challenger of the statute to prove that it is unconstitutional, and this court will not invalidate a statute for repugnance to the constitution

unless the two are in clear and unmistakable conflict. *Id.* This court reviews a circuit court's interpretation of a constitutional provision de novo. *See City of Fayetteville v. Wash. Cty.*, 369 Ark. 455, 255 S.W.3d 844 (2007). Language of a constitutional provision that is plain and unambiguous must be given its obvious and common meaning. *Id.* Neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision. *Id.* Furthermore, when engaging in constitutional construction and interpretation, this court looks to the history of the constitutional provision. *See Foster v. Jefferson Cty. Quorum Ct.*, 321 Ark. 105, 901 S.W.2d 809 (1995). The Arkansas Constitution must be considered as a whole, and every provision must be read in light of other provisions relating to the same subject matter. *Id.*" *Gatzke v. Weiss*, 375 Ark. 207, 210–11, 289 S.W.3d 455, 458 (2008). Additionally, as with statutes, we presume the validity and constitutionality of an agency's rules and regulations. *Dukes v. Norris*, 369 Ark. 511, 256 S.W.3d 483 (2007). This presumption places the burden of proof on the party challenging the rule. *Ark. Dep't of Corr. v. Bailey*, 368 Ark. 518, 247 S.W.3d 851 (2007). *Monsanto Co. v. Arkansas State Plant Bd.*, 2021 Ark. 103, at 6, 622 S.W.3d 166, 170–71. Finally, we review issues of statutory interpretation de novo because it is for this court to decide what a statute means. *Cooper Realty Inv., Inc. v. Ark. Contractors Licensing Bd.*, 355 Ark. 156, 134 S.W.3d 1 (2003); *Ortho-McNeil-Janssen Pharms., Inc. v. State*, 2014 Ark. 124, at 10, 432 S.W.3d 563, 571.

## III. *Point on Appeal*

With these standards in mind, we move to the narrow issue of reviewing the language of Amendment 100.

Given the above standards, our review demonstrates that the plain language of Amendment 100 as a whole provides a step-by-step process for establishing casino gaming in

Arkansas. The ARC must first promulgate rules and establish an application process and period before an entity can be considered an applicant. The ARC set the application window for May 2019. Section 2(b) prescribes that a "casino applicant" is an entity applying for a license. "Apply" is defined as "to make an appeal or request especially in the form of a written application." *Webster's Third New International Dictionary* (*Merriam-Webster.com Dictionary*) (Accessed September 24 2021); "a formal request or petition for something; an application." *New Shorter Oxford English Dictionary* 100 (1993). Further, section 2(b)'s definition of "casino applicant" uses the present participle "applying," a present action to modify "entity," meaning an entity is not a casino applicant until the application process commences. In other words, an entity could not become a "casino applicant" until the ARC opened the application window in May 2019. Once an entity became a casino applicant in May 2019, it had to obtain a letter of support from "the county judge." Ark. Const. amend. 100, § 4(n). Here, the use of the definite article "the" before "county judge" indicates a specific, definite judge, the current county judge—not a former county judge or retired county judge—because those are not "the" county judge. Our prior cases support this plain reading of the Amendment.

In *Davis v. PennyMac Loan Servs., LLC*, 2020 Ark. 180, at 7, 599 S.W.3d 128, 132–33, we addressed the term "the" and explained, "[i]n plain English, 'the' is a definite article that points to a definite object that (1) is so well understood that it does not need description; (2) is a thing that is about to be described; or (3) is important. *The Chicago Manual of Style* R. 5.70 (17th ed. 2017). 'The' is the word used before nouns, with a specifying or particularizing effect, opposed to the indefinite or generalizing force of 'a' or 'an.' *United States v. Hudson*, 65 F. 68, 71 (W.D. Ark. 1894). In contrast, 'a' is an indefinite article used to refer to nonspecific objects, things, or persons that are not distinguished from the other members of a class. *The Chicago*

*Manual of Style, supra*, R. 5.71." *Davis*, 2020 Ark. 180, at 7, 599 S.W.3d 128, 132–33; *see also People v. Enlow*, 310 P.2d 539, 546 (Colo. 1957) ("The word 'the' is a word of limitation—a 'word used before nouns, with a specifying or particularizing effect, opposed to the indefinite or generalizing force of 'a' or 'an.'" *Hudson*, 65 F. at 71.); *BP Am. Prod. Co. v. Madsen*, 53 P.3d 1088, 1092 (Wyo. 2002) ("The definite article 'the' is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'. . . *United States v. Hudson*, 65 F. at 71 (W.D. Ark. 1894).").

Similarly, in *Stout v. Stinnett*, 210 Ark. 684, 197 S.W.2d 564 (1946), we addressed the definite article regarding "the police chief." In that case, a statute authorized the City of North Little Rock to appoint "the Chief" of Police, but North Little Rock appointed two police chiefs. In a case of first impression, we interpreted the phrase and explained: "We think the word 'Chief' denotes one single officer and when as we have pointed out, all through the statutes, including the Civil Service Commission Act, . . . the definite article 'the' is used preceding the word 'Chief,' we think the intention of the lawmakers to provide for but one office of Chief of Police becomes clear and certain." *Stout*, 210 Ark. at 687, 197 S.W.2d at 566 (internal citations omitted).

Accordingly, we hold that the plain language of Amendment 100, passed by the people of Arkansas, stating "the county judge" means the county judge in office at the time the "casino applicant" submitted its application to the ARC.

Gulfside urges us to reach an opposite conclusion and asserts that the Rule and the statute add a temporal requirement that is not included in Amendment 100. Gulfside argues that because Amendment 100 set out in detail the minimum qualifications an applicant must meet in order to be considered for a casino gaming license, the legislature and administrative agencies

are prohibited from adding to those qualifications. Gulfside cites several cases, arguing that the statute in this case has added text to Amendment 100. However, these cases are not on point because the statutes at issue in those cases specifically added qualifications not found or contemplated in the constitutional provision at issue. *See Martin v. Kohls*, 2014 Ark. 427, at 14–15, 444 S.W.3d 844, 852–53 (holding that Act 595 requiring proof of identity is unconstitutional on its face and imposes a requirement that falls outside the ambit of article 3, section 1, of the Arkansas Constitution); *Proctor v. Daniels*, 2010 Ark. 206, at 4, 392 S.W.3d at 363 (holding section 16-10-410(d) unconstitutional because the statute imposed an additional qualification for judicial office in section 16-10-410(d)); *Mississippi County v. Green*, 200 Ark. 204, 138 S.W.2d 377, 379 (1940) (holding section 10 of Act 542 of 1917 was unconstitutional as it imposed additional qualifications for county judge).

Further, Gulfside contends that the triggering time is the effective date of the Amendment. Specifically, Gulfside contends that Amendment 100 applies prospectively from its effective date, and "the county judge" referenced in Amendment 100 empowers the person in office at the time of the effective date to issue letters of support. Gulfside cites *Drennen v. Bennett*, 230 Ark. 330, 331, 322 S.W.2d 585, 586 (1959), as support for its position. Yet, Gulfside's reliance is misplaced. In *Drennen*, we held that constitutional amendments apply prospectively and rejected the argument that we "freeze" the number of Game and Fish Commissioners based on congressional districts that existed on the amendment's effective date and held that the triggering event was the Commission meeting. Likewise, Gulfside contends that *U.S. Term Limits, Inc. v. Hill*, 316 Ark. 251, 872 S.W.2d 349 (1994), directs us to construe any reference to "the county judge" to mean the county judge in office on or after the effective date of Amendment 100. However, *Hill* is not supportive either. We again held that

11

constitutional amendments operate prospectively unless the language used or the purpose of the provision states otherwise and that later action in *Hill*, legislative terms commencing after the enactment, triggered the amendment's requirements.

Although Gulfside argues the Amendment does not require that the letter of support come from the county judge in office at the time of the submission as the Rule and the Act require, we reject Gulfside's interpretation of Amendment 100. "The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 56 (2012).

Having interpreted the language in Amendment 100, we turn to the circuit court's order. First, the circuit court found that the following language of Rule 2.13(5)(b) imposes an additional qualification beyond the plain and unambiguous language of Amendment 100 and is unconstitutional: "shall be dated and signed by the County Judge . . . holding office at the time of the submission of an application for a casino gaming license." For the reasons discussed above, we hold that the Rule is consistent with Amendment 100 and does not impose an additional requirement; therefore, we reverse the circuit court's order on this point. Second, the circuit court declared that Ark. Code Ann. § 27-117-101(b) is unconstitutional for "the same reasons as Rule 2.13(5)(b) of the *Casino Gaming Rules*." We likewise reverse the circuit court's order on this point because the statute is consistent with Amendment 100 and does not impose an additional requirement.

Reversed and dismissed.

WOOD and WOMACK, JJ., and Special Justice JIM SPEARS concur.

HUDSON and WEBB, JJ., dissent.

KEMP, C.J., not participating.

12

**Rhonda K. Wood, Justice, concurring.** I join the majority opinion in full. I write separately to respond to the dissenting opinion's statement that the legislature violated separation of powers. In passing Amendment 100, the people of Arkansas commanded the legislature and the Arkansas Racing Commission to pass laws and rules carrying out the Amendment. Our constitution not only grants this power to the legislature but also mandates action: "To fulfill the purposes of this Amendment, the Arkansas General Assembly *shall* from time to time enact laws, and appropriate monies to or for the use of the . . . Commission."[1] The Amendment also directed the Commission to adopt rules.[2] The legislature therefore did not violate separation of powers when it passed Act 371 to implement (*not interpret*) the Amendment. In other words, the legislature didn't unconstitutionally perform a judicial function when it did what the constitution told it to do.

Even so, the Act merely recapitulated what Amendment 100 already said: a casino applicant must have a letter of support from the county judge. This court interprets that to mean one must be an applicant to obtain the letter of support. No conflict exists between the Act and the Amendment. The truest proof is that one could remove the language that offends the dissent, "at the time the application is submitted," yet it would not alter our interpretation of the Amendment. This is because "the" and "applicant" remain constant.

This appeal raises a question of constitutional interpretation. That requires us to interpret words, and "the words are to be given the meaning that proper grammar and usage would

---

[1] Ark. Const. amend. 100, § 3(c) (emphasis added).

[2] *Id*. § 4(c).

13

assign to them."[3] The majority did just that when it interpreted the Amendment and determined the Act posed no conflict. Rules of grammar guided our conclusion—not rhetoric. As a result of that approach, we cannot just ignore the plain meaning of "applicant." We cannot ignore the definite article "the." And we cannot ignore an express constitutional delegation to the Commission to regulate the application process. These "legal loopholes" (i.e., rules of construction) required "technicality" (i.e., deliberate and careful application).

WOMACK, J., and Special Justice JIM D. SPEARS join in this opinion.

**COURTNEY RAE HUDSON, Justice, dissenting.** Because I believe that the majority has read the language of Amendment 100 in an unduly restrictive manner, I respectfully dissent.

Arkansas voters approved Arkansas Constitutional Amendment 100 in November 2018. As relevant to this appeal, Amendment 100 requires casino applicants

> to submit either a letter of support from the county judge or a resolution from the quorum court in the county where the proposed casino is to be located and, if the proposed casino is to be located within a city or town, shall also require all casino applicants to include a letter of support from the mayor in the city or town where the applicant is proposing the casino to be located.

Ark. Const. Amend. 100, § 4(n). The issue presented in this appeal is whether Amendment 100 requires that the letter of support be issued by the county judge who holds office at the time of the application's submission. The answer seems simple; no, it does not. No such requirement is found in the text of the amendment.

I am not alone in my interpretation. A more robust recitation of the facts illustrates that this plain reading of the amendment was widely accepted until sometime in late 2018 or early 2019. Amendment 100 required the Racing Commission to issue licenses upon the commission's adoption of "rules necessary to carry out the purposes of this amendment." Ark.

---

[3]Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 140 (2012).

Const. Amend. 100, § 4(c). The Racing Commission met on December 26, 2018, to consider those rules. At that meeting, the Racing Commission considered the letter requirement referenced in the amendment. Counsel for the Racing Commission explained the constitutional requirement as follows:

> All the non-franchise-holder applicants have to have a letter of support from either the county judge, the quorum court, or the mayor, or a combination thereof, depending on the circumstances. And we added some language after the comments: "Letters of support and resolutions by the Quorum Court required by these Rules and the Amendment shall be dated after the deadline of the effective date of the Amendment." The effective date of the amendment was November. So any letter that you get from the quorum court or the mayor or a combination of, as long as it's dated after the effective date of Amendment 100, which was in November of 2018, would be considered effective.

Counsel further explained:

> There has been some question about what happens if somebody gets a letter after January 1 with the new administration. Under the rules, a letter dated after the effective date is valid as far as the Racing Commission is concerned.

The proposed rule that was approved for publication at that December 26, 2018 meeting reads as follows:

> All casino applicants for a casino license in Pope County and Jefferson County are required to submit either a letter of support from the county judge or a resolution from the quorum court in the county where the proposed casino is to be located and, if the proposed casino is to be located within a city or town, are also required to submit a letter of support from the mayor in the city or town where the casino applicant is proposing the casino to be located. <u>Letters of support and resolutions by the Quorum Court, required by these Rules and the Amendment, shall be dated after the effective date of the Amendment.</u> [Emphasis in original.]

Accordingly, on December 28, Gulfside submitted to the Racing Commission a letter of support from then Pope County Judge Jim Ed Gibson. On December 31, 2018, Gulfside submitted a letter of support from then Russellville Mayor Randall Horton. Both Gibson's and Horton's terms ended in 2018. Disturbingly, it was only after Gulfside submitted its letters that

15

the Racing Commission's interpretation changed. In essence, the goalposts were moved after the game began. This is patently unfair. On January 3, 2019, counsel for the Racing Commission sent an email with a proposed change to the rule, set forth as follows:

> All casino applicants for a casino license in Pope County and Jefferson County are required to submit either a letter of support from the county judge or a resolution from the quorum court in the county where the proposed casino is to be located and, if the proposed casino is to be located within a city or town, are also required to submit a letter of support from the mayor in the city or town where the casino applicant is proposing the casino to be located. ~~Letters of support and resolutions by the Quorum Court, required by these Rules and the Amendment, shall be dated after the effective date of the Amendment.~~ All letters of support or resolutions by the Quorum Court, required by these Rules and the Amendment, shall be dated and signed by the County Judge, Quorum Court members, or Mayor holding office at the time of the submission of an application for a casino gaming license. [Emphasis in original.]

The Racing Commission met again on January 10, 2019, and approved the January 3 version of the rule for publication and comment. On February 5, 2019, the legislative attorney for the Administrative Rules Review Section of the Bureau of Legislative Research noted in an email to the Racing Commission's attorney that the new language "appears to be an addition to the Rule not mentioned in the language of Amendment 100." In response, the Racing Commission's attorney wrote that the changes "resulted from the [Racing Commission's] meetings with the attorneys for DF&A and the Governor's office." On March 5, 2019, the General Assembly passed Act 371 of 2019, which, like the Racing Commission Rule, added the requirement that the letter of support must come from the currently serving county judge.

The January 3 version of the rule was eventually adopted and was applicable when the Racing Commission opened an application period on May 1, 2019. Gulfside and others applied, but only Gulfside had a letter of support from the county judge. As the majority notes, applications submitted by Gulfside and all other applicants, including Cherokee, were rejected.

16

The Racing Commission stated that none of the applications met the requirements of the Rules, Amendment 100, or Arkansas law, and noted that "Act 371 of 2019 and Rule 2 of the ARC Casino Gaming Rules require that an applicant submit a letter of support from the County Judge, Quorum Court members or Mayor holding office at the time of the submission of an application for a casino gaming license." Gulfside filed a lawsuit challenging the additional requirements.

On August 13, 2019, Cherokee obtained a resolution of support from the then-serving members of the Pope County Quorum Court. Later, it received a letter of support from Ben D. Cross, the then-serving Pope County Judge. Cherokee submitted a new application on January 15, 2020. The Racing Commission accepted this application as part of the May 2019 application period "for good cause shown." On March 24, 2020, the circuit court ruled that the additional requirements found in the rule and statute were unconstitutional and ordered the Racing Commission to score Gulfside's application on the merits. The Racing Commission did not appeal, scored the applications, and twice found Gulfside to be the highest scoring applicant.[1] In fact, the Racing Commission awarded the license to Gulfside on July 31, 2020. On February 4, 2021, we handed down an opinion granting Cherokee's motion to intervene in the litigation below and vacated the circuit court's orders finding the rule and statute unconstitutional. *Cherokee Nation Businesses, LLC v. Gulfside Casino P'ship*, 2021 Ark. 17, 614 S.W.3d 811. On remand, the circuit court again entered orders concluding that the rule and

---

[1]The applications were scored twice because one commissioner's score was disqualified, and another commissioner recused after the vote.

statute were unconstitutional. Cherokee now appeals that determination, and its success today could salvage its failed bid.[2]

In interpreting the constitution on appeal, our task is to read the law as it is written and interpret it in accordance with established principles of constitutional construction. *Zook v. Martin*, 2018 Ark. 293, 557 S.W.3d 880. It is this court's responsibility to decide what a constitutional provision means, and we will review a lower court's construction de novo. *First Nat'l Bank of DeWitt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005). Language of a constitutional provision that is plain and unambiguous must be given its obvious and common meaning. *Id*.

Here, the language is plain and unambiguous and requires simply that a casino license applicant have a letter of support from the county judge "where the proposed casino is to be located." Judge Gibson was the county judge in Pope County when he issued his letter. The fact that Judge Gibson's term ended before the application period began does not mean that the letter he wrote is invalid. Gibson was empowered to act as the county judge during the term of his office. Perhaps sensing this reality, Judge Gibson's successor, who issued a letter supporting Cherokee, executed a July 1, 2020 affidavit claiming to have "rescinded" Judge Gibson's letter. However, Amendment 100 does not provide a county judge with such authority. In short, once Amendment 100 was approved, any letter of support the county judge issued satisfied the constitutional requirements. Here, two casino applicants presented the required letter. Unfortunately, today's decision likely means that Gulfside, the casino applicant that the Racing

---

[2]Inexplicably, the Racing Commission is also an appellant, despite the fact that it has awarded the casino license to Gulfside.

18

Commission has not once, but twice determined to have the superior proposal, will potentially be prevented from operating.

I dissent.

**BARBARA W. WEBB, Justice, dissenting.** My textualist approach easily resolves the issue on appeal without having to torment the word "the" to summon the text of Amendment 100 into an unnecessary technicality. I would have affirmed because the circuit court reached the correct result.

It is the duty of this court, not the General Assembly, to interpret the constitution. *Proctor v. Daniels*, 2010 Ark. 206, at 5, 392 S.W.3d 360, 363. In interpreting the constitution on appeal, our task is to read the law as it is written and interpret it in accordance with established principles of constitutional construction. *Id.* (citing *First Nat'l Bank of DeWitt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005)). An act will be struck down only when there is a clear incompatibility between the act and the constitution. *Landers v. Stone*, 2016 Ark. 272, at 6–7, 496 S.W.3d 370, 375 (citing *Bakalekos v. Furlow*, 2011 Ark. 505, 410 S.W.3d 564). An act that creates additional requirements or qualifications to the text of an amendment is unconstitutional. *Proctor*, 2010 Ark. 206, at 5, 392 S.W.3d at 363.

The appellants contend that the word "the" means the county judge at the time the application is submitted. If the people of Arkansas meant otherwise, conjects the appellants, they would have used the word "any" as in "any county judge" could issue a letter of support. To compound this problem, the legislature approved the "at the time the application is submitted language" and codified it into law. *See* Ark. Code Ann. § 23-117-101. There is one glaring problem—"at the time the application is submitted" is not in the plain text of the constitutional amendment. The logic that requires technical support to define "the county judge" not to mean

19

"any" county judge is akin to Queen Anne's alleged comments about Sir Christopher Wren's architecture at St. Paul's Cathedral, that it was "awful, artificial, and amusing"—by which she meant that it was awe-inspiring, highly artistic, and thought-provoking." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Text* 78 (2012).

In interpreting constitutional text, there is a guiding principle that "[t]he Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from *technical* meaning." *D.C. v. Heller*, 554 U.S. 570, 576–77 (2008) (citing *United States v. Sprague*, 282 U.S. 716, 731, (1931); *Gibbons v. Ogden*, 9 Wheat. 1, 188, 6 L. Ed. 23 (1824)) (emphasis added). Normal meaning may, of course, include an idiomatic meaning, but it excludes secret or *technical* meanings that would not have been known to ordinary citizens in the founding generation. *Id*. (emphasis added). As Justice Scalia put it, "[f]irst, the purpose must be derived from the text." Scalia & Garner, *supra* at 56. "Second, the purpose must be defined precisely, and not in a fashion that smuggles in the answer to the question before the decision-maker." *Id*. With these principles in mind, I turn to the text of Amendment 100, the language of ARC Rule 2.13.(5)(b), and Ark. Code Ann. § 23-117-101.

The text of Amendment 100 at issue in this case is clear—all that is required is a letter of support from the county judge. The county judge is the person elected by the people who acts as the chief executive officer of county government. Ark. Code Ann. § 14-14-1101 et seq. There is only one county judge at a time in a county in Arkansas. *Id*. At no point are there two county judges in a given county. *See id*. This principle of county law and government has been in place for nearly a century and is so well known that it is a given understanding of how county government operates. We must assume that the people of Arkansas knew this when they voted on the plain text of Amendment 100.

20

However, the ARC and the legislature thought differently. When one compares the language of Amendment 100 to the ARC rule and Act 371, there is some surgically attached vestige of language to the Amendment that does not exist in the original text—the letter of support must come from the county judge holding office *at the time the application is submitted*. This text is different than the text of Amendment 100. Having recognized the difference between the plain language of Amendment 100 and the language added by the legislative and executive branches, our inquiry should turn to whether this language imposes an additional requirement or qualification.

If added language poses no additional requirement or qualification, it does not harm the constitution by altering its purpose or meaning. Such language would be functionally inert. However, if there is an additional qualification or requirement, then the ARC and the legislature have altered the amendment and thwarted the will of the people. For this reason, additional requirements or qualifications added to the text of an amendment are unconstitutional. *Proctor*, 2010 Ark. 206, at 5, 392 S.W.3d at 363.

The rule and Act clearly establish an additional requirement or qualification. Departing from the plain language and understanding that there can be only one duly elected county judge serving the people of Pope County at a time, the rule and Act add that it must be the county judge elected and serving at the time the application is submitted. In testing this language to determine if it is a qualification or requirement, we can readily discern that a letter of support issued by a duly elected and legitimate county judge serving at the time the letter of support is issued is insufficient for purposes of a casino application if that same county judge is not currently holding office when the application is submitted.

Where there was only one requirement contained in the text of Amendment 100, a letter of support from the county judge, there is now a second requirement created by the legislative and executive branches—the county judge who issued the letter must be in office when the application is submitted. A valid letter of support obtained by an applicant that would meet the plain textual requirements of Amendment 100 can be defeated by an Act of the legislature and an executive agency. This makes the language surgically attached to Amendment 100 by ARC Rule 2.13.(5)(b) and Ark. Code Ann. § 23-117-101 unconstitutional. It is our duty to amputate this legislative and executive action and restore the will of the people.

The majority's method of constitutional interpretation is that "the" county judge can only, as a *matter of technicality*, mean the one holding office at the time the application is submitted lest the Amendment be read to mean "any" county judge. This tortured definition is completely unnecessary to effectuate the text of Amendment 100. It is sad that the people of Arkansas long for, want, and vote to pass simple, technicality-free laws without endless loopholes—like the ones hinging on the meaning of a simple article adjective. Clearly, the people want to end the unfair appearance of legal loopholes. I prefer to let the people make and pass the laws they want and to be governed in the ways and manners in which they choose. Because the majority does not honor that right and principle, I dissent.

*McDaniel, Wolff & Benca, PLLC*, by: *Bart W. Calhoun*, *Scott P. Richardson*, and *Dustin B. McDaniel*, for appellant Cherokee Nation Businesses, LLC.

*Leslie Rutledge*, Att'y Gen., by: *Kat Hodge-Guest*, Sr. Ass't Att'y Gen., for appellant Arkansas Racing Commission.

*Murphy, Thompson, Arnold, Skinner & Castleberry*, by: *Kenneth P. "Casey" Castleberry*; and *Dodds, Kidd, Ryan & Rowan*, by: *Lucas Z. Rowan*, for appellee.