Cite as 2022 Ark. App. 86

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-20-627

| | |
|---|---|
| ANGELA WHITE AND McKIMMEY ASSOCIATES, REALTORS, LLC <br><br> APPELLANTS <br><br> V. <br><br><br> GREAT AMERICAN ASSURANCE COMPANY, SABINA PRATT, AND RAYMOND PRATT <br><br> APPELLEES | Opinion Delivered February 23, 2022 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION [NO. 60CV-19-7559] <br><br> HONORABLE WENDELL L. GRIFFEN, JUDGE <br><br><br> AFFIRMED |

## N. MARK KLAPPENBACH, Judge

The issue in this appeal is whether Great American Assurance Company (GAAC) has a duty to defend a realtor, Angela White, and a realty company, McKimmey Associates, Realtors, LLC, in relation to a lawsuit filed by Sabina and Raymond Pratt. The Pulaski County Circuit Court considered cross-motions for summary judgment and found that GAAC did not owe a duty to defend under the terms of the GAAC insurance policy issued to McKimmey.  McKimmey and White appeal the grant of summary judgment to GAAC and appeal the denial of their motion for summary judgment. We affirm the grant of summary judgment to GAAC.[1]

---

[1]We will not consider the arguments raised on appeal concerning the denial of McKimmey and White's motion for summary judgment. With certain exceptions not applicable here, the denial of a motion for summary judgment is not reviewable or

The Pratts listed their home for sale. While the Pratts were out of town, White showed the property on April 10, 2018. The Pratts returned home on April 17 to find that many of the inside lights were on and the upstairs door that opened to the exterior balcony from the master bedroom was wide open. Their home sustained extensive interior water damage from rainstorms, and the home's interior was exposed to wind, dust, dirt, bugs, pollen, and extreme changes in temperatures for days. The necessary cleaning and repairs deprived the Pratts of ideal real-estate market timing, and they were physically displaced to make way for the cleaning and repairs. The Pratts are meticulous housekeepers, and they both have physical ailments aggravated by dust, mold, and the like. Mr. Pratt sent two letters to McKimmey to complain of their displeasure, explain the costly remedial measures that would be required, express their expectation that the realty company would be responsible to make things right, and demand a prompt response from McKimmey.

On April 22, Mr. Pratt sent his first letter (that included all the heretofore described information in much greater detail) to McKimmey. The following portion of Mr. Pratt's letter is particularly relevant to this appeal:

> I don't know if you have an E & O policy, don't know what your deductibles/co-pay requirements are, but I am pretty sure if you don't you will have a big out of pocket. If you do, it may be smaller out of pocket now, but your risk assignment will change and you will probably be paying increased premiums for a while.
>
> If you have a carrier, I need the name of the carrier, phone number, point of contact and an open claim number by 12 noon on Tuesday the 24th of April 2018. If you

appealable. *See, e.g., Harris v. City of Fort Smith*, 359 Ark. 355, 197 S.W.3d 461 (2004); *C&R Constr. Co. v. Woods Masonry & Repair, LLC*, 2020 Ark. App. 105, 596 S.W.3d 35.

2

don't have a carrier, then you need to give written assurance that McKimmey Associates, Realtors is taking responsibility before the deadline.
....
I think that your company has a huge liability. If things don't get on track quickly and we have to find a lawyer, the exposure will probably go up.

Mr. Pratt received no response, so on May 2, he sent another letter to McKimmey and White in which he described the efforts that had begun in the cleaning and restoration of the home.  In that letter, Mr. Pratt also wrote:

> Due to your failure to provide insurance carrier and claim number information, I can only conclude that it will require the actions of a regulatory agency or litigation to secure your participation in the repair process.

> While the formal complaints make their way through the system and as a precursor to a lawsuit being filed; I am putting you on notice to preserve any and all materials that could possibly relate to your actions, your company actions in the past or future, concerning me, my wife Sabina, our broker, or our property.

Mr. Pratt listed documents and items that they should preserve, although this was not to be taken as an exhaustive list.

McKimmey purchased a one-year "claims made" "Real Estate Professional Errors & Omissions Insurance Policy" from GAAC, effective May 13, 2018, to May 13, 2019. The Pratts filed a lawsuit against McKimmey and White on February 18, 2019. McKimmey subsequently submitted a claim to GAAC in which it attached Mr. Pratt's April and May 2018 letters as well as the Pratts' lawsuit complaint. On April 25, 2019, GAAC denied the claim, explaining that the claim was evident in the Pratt letters, which predated the effective date of the GAAC policy. Thus, GAAC would not defend McKimmey and White in the Pratt lawsuit.

This led to the litigation at issue in this appeal. In October 2019, White and McKimmey filed a complaint for declaratory judgment against GAAC and the Pratts. White and McKimmey sought a declaration from the circuit court that GAAC had the contractual duty under the insurance policy to defend them in the Pratt lawsuit. In December 2019, White and McKimmey filed a motion for summary judgment asserting that there were no material issues of fact and that they were entitled to judgment as a matter of law on their demand that GAAC defend them because they made a claim shortly after the Pratt lawsuit was filed, which was during the policy period. They attached Mr. Pratt's two letters and a copy of the GAAC insurance policy.

In January 2020, GAAC filed a cross-motion for summary judgment, agreeing that there were no issues of material fact that remained to be determined but asserting that GAAC was clearly correct to deny McKimmey's claim. GAAC contended that this was a "claims made" policy, which provides coverage only if a claim is presented during the policy period. GAAC argued (1) that Mr. Pratt's letters constituted a "claim" under the policy that was made against McKimmey and White before the inception of the GAAC policy; and (2) that Mr. Pratt's letters constituted a basis for McKimmey and White to reasonably expect that their acts or omissions would be the basis of a claim, which existed prior to the inception of the GAAC policy. Under either of these scenarios, the GAAC policy language excluded coverage.

The cross-motions were heard before the circuit court in July 2020. McKimmey and White's attorney argued the Pratt letters contained "a litany of complaints," but the letters

4

were not specific and did not express a "demand for any particular relief." In contrast, GAAC asserted that the insureds themselves presented the Pratt letters as part of their claim, undisputedly showing that they had reason to expect that their acts or omissions would be the basis of a claim, which all occurred prior to the inception of this insurance policy. GAAC also argued that the letters themselves clearly constituted a claim as defined by the policy. The circuit court agreed with both GAAC's arguments, granted summary judgment to GAAC, and denied McKimmey and White's motion for summary judgment. This appeal followed.

Summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Douglas Cos., Inc. v. Walther*, 2020 Ark. 365, 609 S.W.3d 397. Ordinarily, upon reviewing a circuit court's decision on a summary-judgment motion, we would examine the record to determine if genuine issues of material fact exist. *Cherokee Nation Businesses, LLC v. Gulfside Casino P'ship*, 2021 Ark. 183, 632 S.W.3d 284. However, when the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Id.* When parties file cross-motions for summary judgment they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. *Id.* As to issues of law presented, our review is de novo. *Id.*

McKimmey and White contend that the circuit court erred in granting summary judgment to GAAC because Mr. Pratt's letters did not rise to the level of a "claim" or "demand" such that litigation should reasonably have been expected by the insured. Their

5

argument, in essence, is that their claim did not arise until the Pratts filed suit in February 2019 and delivered summonses to the defending parties.

Now we turn to the insurance policy language. The GAAC insurance policy is a "claims made" policy, meaning that it covers claims made or brought only during the policy period, in this case, May 13, 2018, to May 13, 2019. In all capital letters at the beginning of the declarations page, the contract recites:

> THIS POLICY APPLIES ONLY TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD.

The policy explains its "Insuring Agreement" in Section I.B., reciting that it will provide coverage for a claim "provided that prior to the inception date of the first policy issued by the Company, and continuously renewed, no Insured had a basis to believe that any such act or omission, or Related Act or Omission, might reasonably be expected to be the basis of a Claim[.]" Section II.B. defines "Claim" to mean:

> (1) a written demand for money or services received by an Insured, or
>
> (2) a civil proceeding in a court of law, or arbitration proceeding, against an Insured, commenced by the service of summons or receipt of an arbitration demand;
>
> when arising out of an act or omission in the performance of Real Estate Professional Services.

We hold that the circuit court did not err in granting summary judgment to GAAC. Mr. Pratt's two letters clearly qualify as a "claim." The letters do not state damages of a particular dollar amount, but they do inform McKimmey that the Pratts hold McKimmey and White responsible for the damages to them and to their home. The April 22 letter set

out in great detail that the Pratts expected McKimmey to pay for the repairs, specifically asking for an errors-and-omissions insurance claim to be opened by April 24. The April 22 letter also stated that if McKimmey did not have insurance coverage, then McKimmey needed to provide the Pratts written assurance that it would take responsibility for the "serious damages." Mr. Pratt referenced what out-of-pocket costs McKimmey might be facing depended on McKimmey's insurance coverage, or lack thereof. Mr. Pratt added, "[Y]our company has a huge liability," and depending on their response, the Pratts might "have to find a lawyer" and McKimmey's "exposure will probably go up." The May 2 letter noted the company's failure to respond, which "will require the actions of a regulatory agency or litigation to secure your participation in the repair process." The May 2 letter also recited that Pratt was "putting [McKimmey] on notice" to preserve any materials relating to their listing. The Pratts, in no uncertain terms, expected to be compensated by McKimmey and White for any and all damages caused by the upstairs door being left open by a real estate agent after a showing. The letters tell McKimmey that the Pratts have a claim, that the claim is McKimmey's responsibility, and that the claim should be referred to McKimmey's insurance company. Treating the letters as other than a claim requires a tortured construction of its text and plain meaning. *See Chartis Specialty Ins. Co. v. Restoration Contractors, Inc.*, No. 10-1160 ADM/FLN, 2010 WL 3842372 (D. Minn. Sept. 27, 2010); *Berry v. St. Paul Fire & Marine Ins. Co.*, 70 F.3d 981 (8th Cir. 1995).

We hold that the undisputed facts and unambiguous contract language support the circuit court's entry of summary judgment on behalf of GAAC. We affirm.

Affirmed.

VAUGHT and BROWN, JJ., agree.

*David Hodges*, for appellants.

*Barber Law Firm, PLLC*, by: *Mark W. Hodge* and *Adam D. Franks*, for separate appellee Great American Assurance Company.